914 F.2d 790
 Prod.Liab.Rep.(CCH)P 12,587
Joseph D. HUTT, Administrator of the Estate of Kathy Sue
Deuser; Jack S. Deuser, Jr.; and Todd Deuser,
Co-Administrators of the Estate of Jack
S. Deuser, Plaintiffs-Appellants,
v.
GIBSON FIBER GLASS PRODUCTS, INC., et al., Defendants,
Fuhry, Inc., Defendant-Appellee.
 No. 89-5731.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 2, 1990.
Decided Sept. 19, 1990.
 
 F. Thomas Conway, William J. Nold, Eugene L. Mosley (argued), Miller, Mosley, Clare & Townes, Louisville, Ky., for plaintiffs-appellants.
 Robert Stopher (argued), Boehl, Stopher, Graves & Deindoerfer, David Johnstone, Alagia, Day, Marshall, Mintmire & Chauvin, Gary Anderson, Rice, Seiller, Cantor, Anderson & Bordy, Louisville, Ky., for defendant-appellee.
 Before MERRITT, Chief Judge, and JONES and RYAN, Circuit Judges.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiffs-appellants, Joseph D. Hutt, administrator of the estate of decedent Kathy Sue Deuser, Jack S. Deuser and Todd Deuser (collectively referred to as "the Administrators") appeal the district court's grant of summary judgment in favor of defendant Fuhry, Inc. For the following reasons, we affirm in part and reverse in part.
 
 I.
 
 2
 On July 29, 1986, Jack and Kathy Deuser were electrocuted while swimming near the houseboat of Jack's brother, Courtney Deuser, in Harrod's Creek, Jefferson County, Kentucky. At the time of their deaths, the houseboat was docked at a marina owned by Steven and Charlene Habbich.
 
 
 3
 Gibson Fiber Glass Products, Inc. (Gibson) had manufactured the houseboat with a dual voltage electrical system: an alternating current (AC) circuit connected to electrical outlets on shore, and a direct current circuit (DC) drawing power from batteries. The circuits were designed to be electrically isolated from each other, and each operated on a two-wire rather than a three-wire system. The Deusers' deaths resulted from the malfunction of a switch in a light fixture on the houseboat, which caused the AC current to flow from the shore hookup into the switch, through the metal base of the fixture and then into the DC circuit. When the DC current attempted to ground itself through the outdrive of the boat, the water became electrified, killing the Deusers. Investigation subsequent to the accident showed that Gibson employees had removed the grounding wire from the light fixture prior to its installation on the houseboat.
 
 
 4
 On January 8, 1987, the Administrators filed suit against Challenger Circle F Inc. (Circle F), which manufactured the switches; Fuhry Inc. (Fuhry), which manufactured and assembled the light fixture; Gibson, which manufactured the houseboat; Courtney Deuser, owner of the houseboat; Stephen and Charlene Habbich, who owned the boat dock; and Underwriter's Laboratory, Inc. This complaint, originally filed in Jefferson County (Kentucky) Circuit Court, was removed to the United States District Court for the Western District of Kentucky, Chief Judge Johnstone presiding, after the Administrators settled with all defendants except Fuhry. The Administrators agreed as part of the settlement to indemnify the settling defendants should they be found liable to the remaining defendants. Upon completion of discovery, Fuhry moved for summary judgment.
 
 
 5
 In an order entered on March 22, 1989, the district court ruled that Fuhry was entitled to summary judgment because Gibson's employees knew of the importance of attaching the grounding wire in the light fixture; therefore, Fuhry had no duty to warn. The court further ruled that because Gibson altered the light fixture when installing it, Fuhry was entitled to the defense of KRS Sec. 411.320(1), precluding liability when a product has been substantially changed or altered.
 
 
 6
 On March 1, 1989, the Administrators moved for reconsideration, claiming that Gibson's cutting off of the ground wire did not constitute an alteration within the meaning of the Kentucky products liability statute, and that the court had applied the wrong standard for summary judgment. On May 15, 1989, the district court denied the motion. In this denial, the court stated that the standard for summary judgment has remained the same since 1986 when it became the same as that of a directed verdict. Moreover, the court noted that an alternative ground for granting summary judgment existed under Kentucky law, because a defendant passively at fault for falling to detect a hazard may seek indemnity from the one who created the danger. Therefore, even if Fuhry were liable for failing to detect the faulty switch, it could recover from Circle F, the manufacturer. Since the Administrators had agreed to indemnify Circle F, the court found that any recovery granted from Fuhry would have to come from the Deusers' estates under the terms of the settlement. This timely appeal followed.
 
 II.
 
 7
 This court has stated the appropriate standard for granting summary judgment:
 
 
 8
 [O]n a motion for summary judgment the movant has the burden of showing conclusively that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion.
 
 
 9
 Blakeman v. Mead Containers, 779 F.2d 1146, 1150 (6th Cir.1985) (citations omitted). A court deciding a motion for summary judgment must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Appellate review of a grant of summary judgment is de novo. Pinney Dock and Transport Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988).
 
 
 10
 The Administrators argue that genuine issues of material fact exist as to three issues: 1) whether Fuhry had a duty to warn consumers against use of the light fixture in dual voltage systems; 2) whether Gibson's action in clipping the ground wire in the light fixture constitutes an alteration under the Kentucky products liability statute; and 3) whether the indemnification clause of the settlement agreement precludes judgment against Fuhry for malfunction of the fixture. These arguments will be addressed in order.
 
 A.
 
 11
 The Administrators contend that Fuhry had a duty to warn installers of the light fixture not to use the fixture in a dual voltage application or a two wire system and not to remove the ground wire. Fuhry complains that the Administrators failed to raise this claim in the pleadings and raised it only in its motion for summary judgment, thereby precluding review by the court. Fuhry's claim is incorrect. In response to a motion before the state court on March 25, 1988, the Administrators raised the issue of Fuhry's breach of its duty to warn, and it is therefore properly before this court. Failure to warn when there is a duty to do so may give rise to an action in negligence or strict liability. The general rule, however, is that there is no duty to warn the user of a product when the user is aware of the product's danger. See Garrison v. Rohm & Haas Co., 492 F.2d 346, 352 (6th Cir.1974).
 
 
 12
 The district court addressed the duty to warn issue only as to Gibson's removal of the ground wire. The court found that the ground wire was designed to carry current which mistakenly flowed from a short circuit safely into a non-conductor and found that it is undisputed that Gibson's employees cut the wire and did not properly attach it to guard against malfunctions. The district court also found that Gibson's employees admitted they knew the purpose of the wire, that the fixture was to be used with a grounding circuit, and that Gibson was aware of the dangers of ignoring its safety function. The court therefore concluded that Fuhry had no duty to warn Gibson of the danger of removing the grounding wire from the fixture because Gibson knew of the relevant dangers.
 
 
 13
 The Administrators present two arguments on the issue of duty to warn. First, the Administrators assert that Carlos Green, Gibson's electrician, did not understand the danger of severing the grounding conductor because he was uneducated and did not understand, in engineering terms, the consequences of failing to connect the grounding wire. This claim is not supported by the evidence. Green's deposition clearly established that he understood both that the green wire was a ground, and the purpose of grounding electrical fixtures.
 
 
 14
 The Administrators also contend that the district court failed to understand the distinction between a "two wire system and a dual voltage application" and argues that Fuhry was negligent in not warning consumers that the fixture was intended only for single voltage applications and not to be used in dual voltage applications. Fuhry argues that the only difference between a single and dual voltage fixture is the inclusion of a metal divider in the base to physically separate the wiring, and that both the Administrators' expert witness, Donald Scheer, and Gibson's expert, Charles Game, testified that the lack of a divider had no causal relationship to the accident.
 
 
 15
 The district court opinion does not address the issue of whether Fuhry had a duty to warn against use of the light fixture on a dual voltage system. The only evidence presented on this issue was the deposition of an expert who testified that the fixture should not have been used on a dual voltage system and that it would be "improper" for Fuhry to market its fixture for such use. However, there is no evidence in the record that Fuhry had knowledge that its fixtures were being used improperly. Nor does the record show that Gibson knew or should have known of the danger of using the light fixture in question in a dual voltage system. Because questions of material fact remain, we conclude that the district court erred in granting summary judgment for Fuhry on this issue. We also note that if Fuhry is found liable for breach of its duty to warn against use of the fixture in a dual voltage application, such liability would not be subject to indemnification by any co-defendant.[1]
 
 B.
 
 16
 The Administrators next argue that Gibson's actions in cutting off the grounding wire do not constitute an alteration under KRS 411.320(1), which states in pertinent part:
 
 
 17
 In any product liability action, a manufacturer shall be liable only for the personal injury, death or property damage that would have occurred if the product had been used in its original unaltered and unmodified condition.
 
 
 18
 The Administrators further assert that Fuhry is subject to strict liability under Restatement (Second) of Torts Sec. 402A, which states that "one who sells any product in a defective condition unreasonably dangerous to the user is subject to liability for physical harm thereby caused to the ultimate user or consumer ... [by the product if the product reaches] the user or consumer without substantial change in the condition in which it is sold."
 
 
 19
 It is undisputed that Fuhry sold a fixture with a grounding conductor properly attached to the base of the fixture, and that Gibson cut off the grounding conductor. The district court found that the testimony of the Administrators' expert, Donald Scheer, established that the accident would not have occurred with the grounding wire present and properly attached. J. App. at 198. The district court therefore concluded that because the fixture was not used in its original, unaltered and unmodified condition, "[t]he plain language of the statute decrees that Fuhry has no liability in such a situation." J. App. at 198. Therefore, we affirm the district court's finding that Gibson's cutting of the wire was an alteration under Kentucky law.
 
 C.
 
 20
 Finally, the Administrators argue that the district court erred in determining that under Kentucky law, Fuhry would be entitled to indemnification from Circle F, the manufacturer of the switches used by Fuhry, for the short circuiting of the lamp fixture in which they were installed. The district court determined that under Kanawha Steel and Equipment Co. v. Dorsey Trailers, 856 F.2d 780, 783 (6th Cir.1988), Fuhry, even if liable for failure to detect the faulty switch, could recover from Circle F and that under the settlement agreement, "plaintiffs would in effect be collecting from themselves." J. App. at 219.
 
 
 21
 In the Kanawha Steel case, a trailer manufacturer incorporated suspension parts manufactured by Hutchens Industries, Inc. into a trailer. One of the suspension parts, a bracket, failed due to an inadequate weld. This failure caused the wheels of the trailer to break away, resulting in an accident. The trial court found that the bracket was defective and unreasonably dangerous at the time of sale and held both the trailer manufacturer and the parts manufacturer liable. The trial court, however, denied the trailer manufacturer's request for indemnity from Hutchens, the parts manufacturer. On appeal, this court reversed, granting the trailer manufacturer full indemnification from Hutchens. This court found guidance in section 93(1) of the Restatement of Restitution which states:
 
 
 22
 (1) Where a person has supplied to another a chattel which because of the supplier's negligence or other fault is dangerously defective for the use for which it is supplied and both have become liable in tort to a third person injured by such use, the supplier is under a duty to indemnify the other for expenditures properly made in discharge of the claim of the third person, if the other used or disposed of the chattel in reliance upon the supplier's care and if, as between the two, such reliance was justifiable.
 
 
 23
 We also noted Comment a of section 93, which reads, in part, "claimant may be a manufacturer who incorporated the chattel in his product." 856 F.2d at 783. Finally, this court also observed that Kentucky would follow the Restatement of Restitution regarding such indemnity questions. Id.
 
 
 24
 The Administrators state that the district court's reliance on Kanawha Steel is improper because in that case it was established that the sole cause of the accident was a latent defect in a component part. In the instant case, however, a question of material fact remains as to whether the switches were so defective as to be unreasonably dangerous to the user at the time they were sold and therefore whether Fuhry is entitled to indemnification from Circle F. The Administrators argue that despite the fact the switches failed, one cannot conclude that they were defective within the meaning of Restatement of Torts Sec. 402A.
 
 
 25
 The Administrators' expert testified that the fixture defects were either defects in switch design or switch manufacture. In his opinion, insulation conductors at the area of the spring clip were compromised or absent in spots, and this caused the flow of electricity into the water. There is no evidence in the record that either of these switch defects was attributable or apparent to Fuhry. Circle F supplied the switches to Fuhry, who justifiably relied on Circle F's care. Under Kentucky law, a defendant who is passively at fault for failing to detect a hazard may seek indemnity from the one who created the danger. Brown Hotel v. Pittsburgh Fuel Co., 311 Ky. 396, 224 S.W.2d 165 (1949). Even if Fuhry could be found liable for failure of the fixture on the alteration theory, Fuhry is entitled to indemnification from Circle F, who under the settlement agreement is now indemnified by the administrators. Thus, we uphold the grant of summary judgment by the district court for Fuhry on the alteration defense, because the administrators are not entitled to recover from Fuhry on this theory pursuant to the law and the indemnification agreement.
 
 III.
 
 26
 Accordingly, we REVERSE and REMAND the judgment of the district court on the duty to warn issue, and AFFIRM on the remaining questions.
 
 
 
 [1]
 Fuhry's duty to warn of the problem of using the fixture in a dual voltage situation is not related to whether Circle F defectively designed or manufactured the component switch