45 F.3d 430
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Linda DALTON, Plaintiff-Appellant,
v.
SPELLMAN HIGH VOLTAGE ELECTRONICS CORPORATION, Defendant-Appellee.
 No. 93-6423.
 United States Court of Appeals, Sixth Circuit.
 Dec. 28, 1994.
 
 Before: KEITH and DAUGHTREY, Circuit Judges; and JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 Linda Dalton, wife of the deceased Ollie Dalton ("Dalton"), appeals the grant of summary judgment by the United States District Court of the Western District of Kentucky in this diversity products liability action against Defendant-Appellee Spellman High Voltage Electronics Corporation ("Spellman"). For the reasons stated below, we REVERSE AND REMAND.
 
 I. Statement of the Case
 
 2
 On March 16, 1990, Dalton, a 43-year old supervisor of MPD, Inc. ("MPD"), a manufacturer of electronic equipment, was fatally electrocuted when he inadvertently came in contact with an exposed energized metal surface on a high voltage divider ("HVD") manufactured by Spellman. The HVD had been attached to a high voltage power source for testing. Dalton was electrocuted by a charge of approximately 1400 volts. The electrocution occurred when Dalton's arm came into contact with a metal girder at the same time his leg touched the calf-height HVD.
 
 
 3
 HVDs are used to reduce the voltage level on high voltage equipment so that the voltage can be measured during equipment testing. It was supplied to MPD without a shield or warning labels. At the time of the accident the HVD was on the floor outside one of three electrically isolated rooms at MPD, also known as "caged areas" or "safe areas" because they are screened and grounded.
 
 
 4
 Linda Dalton filed a Complaint against Spellman on July 19, 1990, alleging 1) the equipment was defective and unreasonably dangerous, 2) the manufacturer negligently manufactured the device, and 3) the manufacturer unreasonably failed to provide adequate warnings of the known hazards of the equipment.
 
 
 5
 During discovery, Dalton and Spellman deposed various employees of MPD and experts in the high voltage equipment field. Testimony was given, inter alia, regarding the circumstances of the accident, the use of the HVD, the industry standards for use and safety guidelines and Dalton's familiarity with the device.
 
 
 6
 After discovery Spellman moved for summary judgment. The district court granted summary judgment and dismissed the action in a written opinion. In the opinion the district judge made several findings of fact and conclusions of law, ultimately determining that Dalton was killed due to his unsafe use of the HVD. The district court held that HVDs were purchased for use in safe areas, that Dalton connected the HVD to a power source outside of the safe area, and that Dalton's acts were "of such a highly extraordinary nature, unforeseeable by Spellman, that Spellman must be relieved of liability as a matter of law."
 
 
 7
 This timely appeal follows.
 
 II. Discussion
 
 8
 This court applies a de novo standard of review to the facts and the law when reviewing a district court's grant of summary judgment. Pinney Dock & Transport Corp. v. Penn Central Corp., 838 F.2d 1445, 1472 (6th Cir.) cert. denied, 488 U.S. 880 (1988); National Bank v. Shelden, 730 F.2d 421, 423 (6th Cir.1984); Glenway Indus. v. Wheelabrator-Frye Inc., 686 F.2d 415, 417 (6th Cir.1982).
 
 
 9
 On a motion for summary judgment, "the moving party has the burden of showing conclusively that no genuine issue of material fact exists" and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1435 (6th Cir.1987). When considering a motion for summary judgment, the court must view the facts and all inferences in the light most favorable to the non-moving party. 60 Ivy Street Corp., 822 F.2d at 1435; SEC v. Blavin, 760 F.2d 706, 710 (6th Cir.1985). Conversely, all reasonable inferences must be drawn against the movants. Bouldis v. U.S. Suzuki Motor Corp., 711 F.2d 1319, 1324 (6th Cir.1983); American Int'l Group, Inc. v. London American Int'l Corp., 664 F.2d 348, 351 (2d Cir.1981); AMF Inc. v. Computer Automation, Inc., 573 F.Supp. 924, 926 (S.D.OH1983).
 
 
 10
 "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The presence of any of these factors means judgment as a matter of law is impossible. Id. Summary judgement can only be granted when no reasonable jury could find for the plaintiff on the facts presented. Id. at 254.
 
 
 11
 In the instant case, the district court usurped the role of the jury by weighing the evidence, making inferences from the facts and rendering findings of fact in areas where the facts were clearly disputed. First, the district court found "[t]he HVD was incorporated into the test setup by Dalton himself. He chose not to work with his high voltage equipment in the grounded cage on the occasion of his death." This is contradicted directly by the deposition testimony of Rod Payne, an MPD employee, who stated he, himself, set up the equipment and that "Ollie never put hands on [the HVD]."
 
 
 12
 Second, the district court found it was "undisputed that ... [t]he HVD was purchased to be used in a grounded cage." However, Spellman's own president, Merrill Skeist, stated in deposition testimony that at the time of the accident the HVD was being used for the purpose it was intended to be used. Ron Lee, the MPD employee who ordered the HVD from Spellman, stated in deposition testimony that the HVD was being used outside the caged areas within a month or two months after it arrived.
 
 The district court opinion further stated
 
 13
 As an experienced technician, [Dalton] well knew the dangers of using the HVD in the manner in which he did. We find that these particular facts are of such a highly extraordinary nature, unforeseeable by Spellman, that Spellman must be relieved of liability as a matter of law. Dalton v. Spellman High Voltage Electronics Corp., No. 90-0125, slip op. at 6 (D.Ky. Sept. 30, 1993).
 
 
 14
 This statement by the district court ignores the disputed factual question of whether warning labels should have been required in spite of Dalton's apparent knowledge. Payne's deposition testimony stated in part:
 
 
 15
 Q All I'm leading up to is you didn't need a warning label on the top ring to tell you that [it was lethally dangerous], did you?
 
 
 16
 A It's like a snake trainer. He may do this ever day but does it stay in his mind continuously that he may die. I've been shocked by a thousand (1,000) volts, but it was low energy. It's like a spark plug on a car. I don't know how to put--danger, yeah, there's danger, but it doesn't stay with you all the time.
 
 
 17
 The district court's decision disregards disputes in the deposition testimonies regarding whether the HVD was defectively designed, whether the HVD should have been equipped with a shield and whether the HVD was unreasonably dangerous without warning labels.
 
 
 18
 The district court in this case made evidentiary determinations that should have been left to the jury. Thus, summary judgment was improper.
 
 III. Conclusion
 
 19
 For the reasons stated above, we REVERSE the district court's summary judgment for defendant and REMAND this matter for trial.
 
 
 20
 JOINER, District Judge, concurring in judgment.
 
 
 21
 I agree that the grant of summary judgment must be reversed, but would do so only for resolution of plaintiff's failure to instruct claim. Plaintiff's claim that the HVD should have been equipped with a shield is not supported by the expert testimony required under Kentucky law, because " 'proof of nothing more than that a particular injury would not have occurred had the product which caused the injury been designed differently is not sufficient to establish a breach of the manufacturer's or seller's duty as to the design of the product.' " Jones v. Hutchinson Mfg., Inc., 502 S.W.2d 66, 70-71 (Ky.1973) (quoting 63 Am.Jur.2d Products Liability Sec. 73 at 79 (1972)). Accord, Sexton v. Bell Helmets, Inc., 926 F.2d 331, 337 (4th Cir.) (applying Kentucky law), cert. denied, 112 S.Ct. 79 (1991). Additionally, there is no duty to warn of a known danger, Hutt v. Gibson Fiber Glass Products, Inc., 914 F.2d 790, 793 (6th Cir.1990), and plaintiff does not dispute that Dalton was aware that the HVD carried high voltage when it was in operation. Consequently, plaintiff's shield and failure to warn claims properly were dismissed.
 
 
 22
 Plaintiff also alleged, however, that Spellman was liable by reason of its failure to instruct MPD on the safe use of the HVD. This claim was not addressed by the district court, and remains a viable theory of liability. The only material accompanying the HVD's delivery to MPD was a single sheet of paper containing product specifications. Plaintiff's expert testified that Spellman should have provided MPD with instructions on the safe use of its product. Significantly, Spellman's president testified regarding his company's internal procedures for the safe use of the HVD, and faulted MPD for not having similar procedures in place. Ultimately, MPD independently developed a procedure similar to Spellman's for the safe use of the HVD, but only after Dalton's death made the need for such a restrictive procedure evident. While Spellman defends on the grounds of unsafe use, Spellman's own failure to instruct MPD is alleged to be the reason for that unsafe use. In the absence of adequate instructions regarding safe use of a product, the defendant cannot shift to the plaintiff the burden of proving that it would not have misused the product regardless. Leonard v. Uniroyal, Inc., 765 F.2d 560, 567-68 (6th Cir.1985).
 
 
 23
 For these reasons, I would reverse and remand to permit plaintiff the opportunity to proceed on her failure to instruct claim.
 
 
 
 *
 The Honorable Charles W. Joiner, United States Senior District Judge for the Eastern District of Michigan, sitting by designation