RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ANTHONY SMITH, JR. and LORETTA LYNN SMITH,
        *Plaintiffs-Appellants* (14-6406),

CHARTIS CASUALTY COMPANY,
        *Intervening Plaintiff-Appellant* (14-6461),

    *v.*

JOY TECHNOLOGIES, INC., d/b/a Joy Mining
Machinery,

        *Defendant-Appellee.*

Nos. 14-6406/6461

_____

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 6:11-cv-00270—Amul R. Thapar, District Judge.

Argued: April 27, 2016

Decided and Filed: June 30, 2016

Before: MERRITT, BATCHELDER, and GILMAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** R. Lauren Horner, JONES WARD, PLC, Louisville, Kentucky, for Appellants in 14-6406. Kelley D. Gray, POHL & AUBREY, PSC, Louisville, Kentucky, for Appellant in 14-6461. Nicholas C. Pappas, FROST BROWN TODD LLC, Indianapolis, Indiana, for Appellee. **ON BRIEF:** Lawrence Lee Jones II, JONES WARD, PLC, Louisville, Kentucky, for Appellants in 14-6406. Kelley D. Gray, POHL & AUBREY, PSC, Louisville, Kentucky, for Appellant in 14-6461. Nicholas C. Pappas, Darren A. Craig, FROST BROWN TODD LLC, Indianapolis, Indiana, Casey Wood Hensley, FROST BROWN TODD LLC, Louisville, Kentucky, Larry C. Deener, LANDRUM & SHOUSE, Lexington, Kentucky, for Appellee.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.    Anthony Smith was severely injured in October 2010 while working amidst a high-wall mining (HWM) system at a coal mine owned and operated by Southern Coal Corp. in Harlan County, Kentucky. As he was disengaging a conveyor car from the system, Smith inadvertently placed his foot in a "pinch point" that existed between a hydraulic pusher used to launch cars into the mine and an outer guide rail on the mining platform.  When the hydraulic pusher was prematurely activated by another worker, it crushed Smith's foot against the guide rail.  The injury resulted in the amputation of his lower left leg.

Smith and his wife filed suit in Kentucky state court against the HWM system's manufacturer, Joy Technologies, Inc. (Joy), and against the conveyor-car manufacturer, ICG ADDCAR Systems, LLE (ICG), alleging negligence and strict liability for defective design and failure to warn, as well as loss of consortium.  ICG removed the case to federal court and was later dismissed pursuant to a settlement agreement.  After a six-day trial in October 2014, the jury returned a verdict in Joy's favor.

On appeal, the Smiths argue that the district court erred by (1) instructing the jury that Joy could be liable for negligent failure to warn only if Anthony Smith was unaware of the danger he faced, and (2) instructing the jury regarding a rebuttable presumption of nondefectiveness.  The Smiths also request that we certify to the Kentucky Supreme Court questions of state law concerning both of these jury instructions.  Finally, intervenor Chartis Casualty Company, which provided worker's compensation insurance for Southern Coal, challenges a third jury instruction regarding the apportionment of fault among the parties.  For the reasons set forth below, we **AFFIRM** the judgment of the district court and **DENY** the Smiths' motion to certify their proposed questions of state law.

# I.  BACKGROUND

## A.     HWM system design and operation

HWM systems are used to extract coal in surface-mining operations.  Operating much like a train, the system includes a continuous extraction device (called a "miner") made up of a string of conveyor cars that are kept in place by guide rails, with the cars collecting the coal as it is dislodged from the seam.  Attached to the miner's first car is a large "cutter head" that penetrates the coal seam.  As the cutter head advances further into the seam, more conveyor cars are added to the miner.

The continuous miner is deployed from a launch platform.  Hydraulic car pushers, known as "pusher jacks," are installed on the launch platform and push additional cars into the mining hole as the miner advances.  After all the cars are filled with coal from the coal seam, mine workers reverse the conveyor function and remove each car, one by one, from the launch platform to empty its contents.

Joy manufactured the HWM system in question in the early 1990s.  The system was leased and sold to various operators over the course of several years.  In 1999, it was sold for scrap to Pittston, another mining operator.  The system was later acquired by Appalachian Fuels, which broke down the system and moved it to several different mining locations.

At the time that the HWM system was originally sold by Joy, its launch platform included two inner guide rails to align the continuous miner as it entered the mine.  Of particular importance to the present case is that the original HWM system did not include the outer guide rails that contributed to the creation of a "pinch point" on the launch platform.  These outer guide rails were added later by Teddy Triplett, then an employee of Appalachian Fuels, who would subsequently become Smith's foreman at the Harlan County mine.

The parties do not dispute that Triplett was the one who added these outer guide rails, presumably because he needed to maintain alignment between the HWM system and a continuous miner larger than the one that Joy manufactured.  Joy maintains that the outer guide rails were never part of its original design because they were unnecessary to the functioning of

its own continuous miner, and that it had no knowledge that the HWM system had been modified to include outer guide rails.

Between 2000 and 2007, Triplett and his crew moved the HWM system to several different locations across Illinois and Kentucky. When Triplett became the foreman at the Harlan County mine, he asked Smith to help him relocate the HWM system, which was then in Illinois. Triplett and Smith disassembled the HWM system, transported it to Kentucky, and reassembled it for use at the Harlan County mine.

**B.      The incident**

On October 29, 2010, Smith was working on the HWM system's launch platform, disengaging the conveyor cars as they were being removed from the mining hole. This process required workers to uncouple each car in turn. Sometimes electrical cables on the cars would become stuck during the removal process, which required that the cables be physically dislodged in order to remove the car. This is precisely what happened immediately before the incident at issue. While working to dislodge one car's electrical cable, Smith inadvertently placed his foot in the "pinch point" between the hydraulic pusher and one of the outer guide rails on the launch platform. At the same moment, a worker sitting in the cab of the miner prematurely activated the hydraulic pusher. The pusher advanced, crushing Smith's foot between the pusher jack and the blunt end of the outer guide rail.

As a result of this injury, a Kentucky administrative law judge determined that Smith was totally disabled and awarded him workers' compensation benefits under Kentucky's Workers' Compensation Act. These benefits are being paid by Smith's employer, Southern Coal, through Chartis.

**C.      Procedural background**

The Smiths filed suit against both ICG and Joy in 2011. In 2012, Chartis filed an intervening complaint in order to protect its subrogation interests regarding the payment of workers' compensation benefits to Anthony Smith. ICG was later dismissed from the action

pursuant to a settlement.  The remaining claims consisted of the Smiths' direct claims against Joy and the intervening claim of Chartis.

To help facilitate a possible settlement, the district court held a nonbinding summary jury trial in August 2014.  That trial resulted in a $7.7 million verdict in favor of the Smiths.  Further attempts at settlement were unsuccessful, however, and a six-day jury trial was held in October 2014.

At trial, Anthony Smith testified regarding his knowledge of the dangers of the HWM system.  He specifically stated that he had been warned about the existence of the "pinch point," was told to avoid it, and was shown where the HWM system's emergency stops were located.  The HWM system included no visual or audible warning systems, barriers, or guard rails to raise additional awareness of the existence of the "pinch point."

On the fifth day of trial, the district court held a charge conference in which it considered Joy's proposed jury instructions.  Some of the proposed instructions differed from those provided at the summary jury trial.  The Smiths objected to two instructions in particular.

First, the Smiths objected to Joy's proposed instruction concerning a product manufacturer's duty to warn a "knowing user" under Kentucky law.  Joy's proposed instruction, adopted by the district court as Jury Instruction 19, stated:

> In this case, Joy had a duty to the Plaintiffs to exercise ordinary care to warn of dangers known to Joy, or dangers Joy had reason to know, but not known to persons whose use of the product could reasonably be anticipated. . . .  To succeed on this claim, Plaintiff Anthony Smith must prove . . . [that he] was unaware of the dangers of the High Wall Mining System . . . .

The Smiths argued that this instruction contravenes Kentucky's comparative-fault principles.  Their argument relied primarily on two Kentucky Supreme Court cases, *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385 (Ky. 2010), and *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901 (Ky. 2013).  In those cases, the Kentucky Supreme Court held that a plaintiff's knowledge of an open and obvious danger does not necessarily bar all recovery in a premises-liability context.  *McIntosh*, 319 S.W. 3d at 394-94; *Shelton*, 413 S.W.3d at 918.  The Smiths argued that, rather than barring recovery altogether, these relatively recent

cases establish that a plaintiff's knowledge of a danger goes to the apportionment of fault, not to whether a duty exists. Jury Instruction 19, they contended, erroneously created an absolute bar to recovery based on Anthony Smith's knowledge of the dangers of the HWM system, whereas the instruction should instead have characterized his knowledge as a factual question that bears on the apportionment of fault.

After receiving briefing by both parties, the district court overruled the Smiths' objection. The court cited a long line of Kentucky cases that negate a manufacturer's duty to warn when the user is aware of the product's danger, reasoning that "[a] warning from a manufacturer to a user who already knows of the danger has no impact on the user's behavior." Distinguishing *McIntosh* and *Shelton* as cases dealing with a landowner's duty of care to invitees in the face of open and obvious dangers, the district court noted that "[p]remises liability is a distinct doctrine from products liability." It also cited recent Kentucky products-liability caselaw and observed that "[n]o court has altered the elements of failure to warn," even within the construct of the comparative-fault scheme. Accordingly, the court concluded that the knowing-user instruction was appropriate.

The Smiths also had a second objection, this time to Jury Instruction 17. This instruction pertained to Kentucky's rebuttable presumption that a product is not defective (1) after a certain lapse of time, or (2) if the design, manufacturing, and testing of the product conformed to prevailing standards or state of the art at the time of manufacture. *See* Ky. Rev. Stat. Ann. § 411.310. Jury Instruction 17 specifically stated:

> In a product liability action, there are two presumptions under Kentucky law:
>
> (1) The design of a High Wall Mining System was not defective if at the time of design and manufacture, its design, methods of manufacture, and testing conform to the generally recognized and prevailing standards or the state of the art in existence at that time.
>
> (2) The design of the High Wall Mining System was not defective if the injury, death or property damage occurred either more than five (5) years after the date of sale to the first consumer or more than eight (8) years after the date of manufacture.
>
> The plaintiff may rebut these presumptions by demonstrating, by a preponderance of the evidence, that the product was defective.

Such an instruction was improper, the Smiths argued, because Kentucky law holds that "[i]t is never proper to instruct the jury as to presumptions of law or fact." *See Pac. Mut. Life Ins. Co. v. Meade*, 134 S.W.2d 960, 965 (Ky. 1939). They further cited several Kentucky cases cautioning that "presumptions and details on the nuances of the law should not be included" in jury instructions in civil cases. *See Briggs v. Kreutztrager*, 433 S.W.3d 355, 362 (Ky. Ct. App. 2014) (citing *Olfice, Inc. v. Wilkey*, 173 S.W.3d 226, 228-29 (Ky. 2005)).

The district court again disagreed and overruled the Smiths' objection. It first noted that the Kentucky Supreme Court has itself acknowledged that KRS § 411.310 is "'unlike other statutes creating presumptions' because it required rebuttal by a preponderance of the evidence, not just evidence." The court thus concluded that this evidentiary variation was an indication that KRS § 411.310 "may not fall within that broad rule" in Kentucky against instructing a jury on legal presumptions.

Moreover, the district court reasoned that an instruction on the rebuttable presumption was "necessary to give effect to the statute." The court observed, however, that the statute did not change the already existing burden of proof in design-defect cases, which left the court perplexed regarding "what the statute is meant to accomplish." Nevertheless, the court reasoned that such an instruction "imbues the statute with some meaning" by the simple fact that it would "provide[] the jury with a starting point for its analysis." Accordingly, the court overruled the Smiths' objection to Jury Instruction 17. The trial concluded the same day that the court overruled the objections.

After a brief deliberation, the jury returned a verdict in Joy's favor, finding that the HWM system was not defectively designed and that Joy had not negligently failed to warn Smith of a known hazard. The Smiths appealed, and also requested that this court certify questions of state law regarding both jury instructions to the Kentucky Supreme Court. That motion to certify was in turn referred to this panel, which reserved judgment on the motion pending a full briefing on the merits of the appeal and oral argument.

## II. ANALYSIS

### A.      Standard of review

The legal accuracy of jury instructions is reviewed de novo.  *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 305 (6th Cir. 2011).  "Reversal of a judgment on the basis of an erroneous jury instruction may occur 'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'"  *Id.* at 305-06 (quoting *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999)).  Jury instructions are reviewed "as a whole in order to determine whether they fairly and adequately inform the jury of the relevant considerations and provide a sound explanation of the applicable law to aid the jury in reaching its decision."  *Harrod*, 168 F.3d at 890 (citation omitted).  We must therefore find "both an error in jury instructions and resulting prejudice before reversal is justified."  *Roberts ex. rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 787 n.3 (6th Cir. 2003).

### B.      Grounds for state-law certification

Kentucky law permits federal courts to certify questions of law "which may be determinative of the cause then pending before the originating court and as to which it appears to the party or the originating court that there is no controlling precedent."  Ky. R. Civ. P. 76.37(1). The decision to certify a question to a state court "lies within the sound discretion" of the federal courts, which "generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks."  *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (citations and internal quotation marks omitted).  We may therefore decline certification even if the Kentucky Supreme Court "has not addressed the exact question at issue," so long as Kentucky law provides "well-established principles to govern" the outcome of the case.  *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) ("Resort to the certification procedure is most appropriate when the question is new and state law is unsettled.").

**C.     The knowing-user instruction**

Regarding Jury Instruction 19, the Smiths requested certification of whether, "[i]n a failure to warn case, . . . any knowledge of a product's potential dangers foreclose[s] liability under Kentucky's comparative fault regime."  On this issue, we deny certification and affirm the district court's decision because (1) Kentucky law plainly establishes that there is no duty to warn of known hazards, and (2) the cases offered by the Smiths in support of certification are plainly distinguishable and do not disrupt the longstanding rules governing a failure to warn in the products-liability context.

### 1. *Kentucky law plainly establishes that there is no duty to warn of known hazards in products-liability cases*

First, this circuit has already examined Kentucky law on the issue of known hazards in a products-liability context and has found it to be relatively settled.  *See King v. Ford Motor Co.*, 209 F.3d 886, 894 (6th Cir. 2000) (noting that "in Kentucky there is no duty to warn of a known danger" in a products-liability case); *Jordan v. Massey-Ferguson, Inc.*, No. 95-5861, 1996 WL 662874, at *4 n.2 (6th Cir. Nov. 12, 1996) (per curiam) (holding that actual knowledge "obviates any continuing duty to warn of that danger"); *Hutt v. Gibson Fiber Glass Prods., Inc.*, 914 F.2d 790, 793 (6th Cir. 1990) ("The general rule . . . is that there is no duty to warn the user of a product when the user is aware of the product's danger."); *Watters v. TSR, Inc.*, 904 F.2d 378, 381 (6th Cir. 1990) (observing that "Kentucky law imposes a general duty on manufacturers and suppliers to warn of dangers known to them but not known to persons whose use of the product can reasonably be anticipated" (citing *Garrison v. Rohm & Haas Co.*, 492 F.2d 346, 352 (6th Cir. 1974))).  Because Anthony Smith expressly testified that he was made aware of the danger of the "pinch point" repeatedly in training and by his supervisors, the existence of an additional warning would have done no good.  A jury instruction reflecting this longstanding principle was therefore proper.

### 2. *The cases on which the Smiths rely do not address products-liability actions in any way and are therefore inapplicable to the instant case*

Certification of the above-described question is also inappropriate because the Kentucky Supreme Court has not signaled any intent to extend its premises-liability caselaw to the

products-liability context. The cases that the Smiths offer in support of their argument for certification are entirely devoid of any reference to products liability. They instead involve specifically and exclusively a landowner's duty of care to an invitee regarding open and obvious dangers. Not only is this distinction apparent on its face, but a close reading of the cases offered by the Smiths reveals that their underlying rationale would not easily align with the principles underlying failure-to-warn actions in the products-liability context.

The Kentucky Supreme Court in *Kentucky River Medical Center v. McIntosh*, 319 S.W.3d 385, 394-95 (Ky. 2010), held that a hospital owed a duty of care to a paramedic who tripped on a curb outside the emergency room despite the open and obvious nature of the curb. In doing so, the court observed "the manifest trend . . . away from the traditional rule absolving, *ipso facto*, owners and occupiers of land from liability for injuries resulting from known or obvious conditions," and toward "allow[ing] the jury to evaluate the comparative fault of the parties, typical in modern negligence cases." *Id.* at 389 (brackets, citation, and internal quotation marks omitted). The traditional rule started "by reasoning that a land possessor's duties to protect invitees is predicated upon his superior knowledge concerning the dangers of his property." *Id.* at 390 (brackets, citation, and internal quotation marks omitted). But when a danger was open and obvious, "the invitee [was thought to] be just as aware of the danger." *Id.* Accordingly, under the traditional rule, "the basis for placing a duty on the land possessor—his superior knowledge—does not exist when the danger is truly open and obvious." *Id.* at 390.

But the *McIntosh* court then explained its divergence from the traditional rule, rooting its rationale in Section 343A of the Restatement (Second) of Torts, a section titled "Liability of Possessors of Land to Persons on the Land: Special Liability of Possessors of Land to Invitees: Known or Obvious Dangers." This section created "an exception to the rule that a land possessor will not be liable for open and obvious dangers when the possessor should anticipate the harm anyway." *McIntosh*, 319 S.W.3d at 391 (internal quotation marks omitted). Such an exception was warranted, reasoned the court, because "[a] land possessor's duties are not based only on his superior knowledge," but also "on the land possessor's unique position as the only person who can fix the dangers"—in other words, on his "superior ability to issue repairs." *Id.* at 393.

This "superior ability" rationale is notably absent in the products-liability context.   In fact, the *McIntosh* court explicitly distinguished the "superior ability to issue repairs" in the premises-liability context from the broader duty to warn of open and obvious dangers, as stated in the Restatement (Third) of Torts, noting:

> The purpose of a warning is to equalize the parties' knowledge about the danger. So when we presume their knowledge is already equal, as we do for obvious conditions, the warning could serve no purpose. Thus, "the conclusion that there is no liability for open and obvious dangers *for which the only reasonable precaution is warning* is correct."

*Id*. (quoting Restatement (Third) of Torts: Physical and Emotion Harm § 51 cmt. k.) (brackets omitted) (emphasis in original).   In doing so, the *McIntosh* court reaffirmed the longstanding principle that there is no duty to warn of a known danger because the warning would serve no purpose.

This conclusion is bolstered by the Kentucky Supreme Court's decision in *Shelton v. Kentucky Easter Seals Society, Inc.*, 413 S.W.3d 901 (Ky. 2013).   That case concerned a woman who sustained injuries when her foot became entangled in cords that were plainly visible beside her husband's hospital bed.  *Id.* at 903.   In finding that the open-and-obvious doctrine did not absolve the hospital of its general duty to maintain a reasonably safe premises, the court again conspicuously cabined its holding to land possessors:   "Under this modern approach to cases dealing with open-and-obvious dangers, there is no duty for the land possessor to warn of the dangers; but this does not mean there is no duty at all."  *Id*. at 907 (brackets, citation, and internal quotation marks omitted).   And as in *McIntosh*, the *Shelton* court's analysis focused on a duty to maintain the property in a reasonably safe condition, not on the duty to warn.  *Id*. at 914-15.   It reinforced this principle when it stated the following:

> [T]he open-and-obvious doctrine only eliminates a defendant's duty to *warn* because the condition is a warning in itself and places the plaintiff on the same level of knowledge about the premises as the land-possessor defendant.  But if the circumstances are such that the risk remains despite the warning provided by the condition itself, *i.e.*, it is foreseeable that the invitee will forget about the danger, the situation is akin to a latent danger.  And latent dangers, those that are unknown to the invitee, enable the landowner to be subjected to liability if reasonable care is not exercised.

*Id*. (footnotes omitted) (emphasis in original).

The preceding passage emphasizes the responsibility of a "land-possessor," not the manufacturer of a product. Its application to the case at hand is therefore unjustified because the manufacturer of a product does not maintain control over the product in the same way that a landowner exercises continuous control over its premises. In sum, a manufacturer is not in the same "unique position" as a landowner to "fix the dangers" when they appear. *See McIntosh*, 319 S.W.3d at 391, 393.

In a final effort to convince us otherwise, the Smiths point to the Kentucky Supreme Court's most recent decision regarding an open and obvious danger in *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288 (Ky. 2015), a premises-liability action concerning a hotel guest who slipped and fell on ice outside the hotel entrance. *Id.* at 289. The *Carter* court overturned a longstanding rule from *Standard Oil Co. v. Manis*, 433 S.W.2d 856 (Ky. 1968), to hold that even natural outdoor hazards that are obvious to an invitee do not absolve a landowner's ordinary duty of care. *Id.* Although in the same context as *McIntosh* and *Shelton*, the opinion in *Carter* contains the perhaps overbroad statement that "all open and obvious hazard cases, including obvious natural outdoor hazard cases, are subject to the comparative fault doctrine." *Id*. at 289-90. The Smiths seize on this statement and urge its applicability to the present case.

But the Smiths' reliance on *Carter* is inapposite. As in *McIntosh* and *Shelton*, the *Carter* court never intimated that it was extending its rationale for open and obvious dangers in premises-liability actions to failure-to-warn cases in the products-liability context. Nor did it suggest that the failure-to-warn analysis in products-liability cases is in any way mutually exclusive of, or inconsistent with, the comparative-fault scheme. The court in *Carter* simply overturned the rule from *Manis*, another premises-liability case regarding natural outdoor hazards. *Id*. at 298-300.

Because we find no indication in *McIntosh*, *Shelton*, or *Carter* that the Kentucky Supreme Court contemplated extending the "superior ability to issue repairs" rationale to a failure-to-warn claim in products-liability cases, we decline to certify the question to that Court. We hasten to add, however, that an injured party whose knowledge of a product's danger

prevents his recovery on a failure-to-warn claim is not completely devoid of a remedy. He still has the prospect of recovering on a design-defect claim. That alternative theory was indeed put to the jury in this case, which found in favor of Joy. The Smiths have not challenged that verdict on appeal.

**D.        Jury instruction on the rebuttable presumption of nondefectiveness**

The Smiths next argue that the district court's Jury Instruction 17 on the rebuttable presumption of nondefectiveness was in error, and that a question regarding the propriety of such an instruction should be certified to the Kentucky Supreme Court. They contend that it was the district court's duty to decide whether the presumptions under § 411.310 had been rebutted as a matter of law and that, after deciding this question, the court should have instructed the jury regarding the legal framework for deciding whether the HWM system was defective.

Little guidance exists on the proper use of the presumption embodied in Ky. Rev. Stat. Ann. § 411.310, including whether the presumption should be used in a jury instruction. As a general rule, however, Kentucky courts disfavor jury instructions regarding presumptions in civil cases. *See Briggs v. Kreutztrager*, 433 S.W.3d 355, 362 (Ky. Ct. App. 2014) ("Because all presumptions have disappeared when jury deliberations commence, under Kentucky's bare-bones approach to jury instructions in civil cases, presumptions . . . should not be included."). To avoid confusing or misleading the jury, these civil-law presumptions "live and die without the knowledge of the jury, and without affecting the judge's charge in any way, primarily because juries are thought to be incapable of understanding the legal aspects of their application." *Rentschler v. Lewis*, 33 S.W.3d 518, 521 (Ky. 2000) (citation and internal quotation marks omitted).

What arguably distinguishes the issue in this case from the general rule against presumptions in instructions is that the statute in question, Ky. Rev. Stat. Ann. § 411.310, requires a rebuttal not simply by an unspecified quantity of evidence, but by "a preponderance of the evidence." The only case that appears to acknowledge this peculiar aspect of § 411.310 is *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409 (Ky. 1998). There, the Kentucky Supreme Court noted that requiring "a preponderance of the evidence" rather than simply some

evidence "at least suggests a shifting of the burden of proof and the creation of a jury issue," such that an instruction might be appropriate. *Id*. at 415. But because the issue was not preserved on appeal, the Court declined to address it, concluding that it "must await resolution in another case." *Id*.

Joy argues that the instant case is not the appropriate vehicle through which to reach such a resolution. Instead, it contends that the district court's correct recitation of Kentucky law was sufficient. *See King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000) ("In a diversity action, state law determines the substance of the jury instructions; however, questions regarding the propriety of the instructions are governed by federal procedural law.").

We agree with Joy that certification under these circumstances is inappropriate. A federal district court has "discretion to instruct the jury in any manner it deem[s] appropriate, as long as it correctly state[s] Kentucky's substantive law, instruct[s] on the issues relevant to the case at hand, and [does] not mislead the jury." *Id.* at 897. Here, the district court informed the jury that the presumption of nondefectiveness could be overcome only if the Smiths showed that the HWM system was defective by a preponderance of the evidence. This instruction is entirely consistent with Kentucky law. Ky. Rev. Stat. Ann § 411.310.

Nor did Jury Instruction 17 tend to mislead the jury or prejudice the Smiths. *See King*, 209 F.3d at 897. Neither the Smiths' briefing nor the record provides any basis for such a finding of prejudice. *See Persian Galleries, Inc. v. Transcon. Ins. Co.*, 38 F.3d 253, 257 (6th Cir. 1994) ("Federal law . . . governs in determining whether the jury instruction was prejudicial."). In light of all the evidence, including evidence that the outer guide rails were installed on the launch platform without Joy's knowledge and that Anthony Smith's foot was crushed between one of those rails and the pusher jack when another mine worker prematurely activated the jack, the jury had ample reason to find that there was insufficient evidence to prove that the HWM system as manufactured by Joy was in any way defective.

Given these principles of federalism, and the latitude afforded district courts when instructing juries on questions of state law, we find no reason to certify this question to the

Kentucky Supreme Court. We accordingly affirm the judgment of the district court regarding Jury Instruction 17.

**E.        Chartis's challenge to the apportionment-of-fault jury instruction is moot**

Finally, we briefly address Chartis's challenge to the inclusion of Southern Coal as a third-party settlor in the apportionment-of-fault jury instruction. The jury never reached this issue because of its finding in favor of Joy and, consequently, there was no judgment against which Chartis could recover its payment of workers' compensation benefits. Because we affirm the judgment of the district court, Chartis's challenge to this instruction is moot.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court and **DENY** the Smiths' motion to certify their proposed questions of state law.