[Cite as *Victoria's Secret Stores, L.L.C. v. Cintas Corp. No. 2*, 2021-Ohio-4327.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Victoria's Secret Stores, LLC, | : | |
| Plaintiff-Appellant, | : | No. 21AP-97 |
| | | (C.P.C. No. 19CV-616) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Cintas Corporation No. 2, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 9, 2021

**On brief:** *Perez & Morris LLC, Joshua D. Rockwell,* and *Sarah C. Perez*, for appellant. **Argued:** *Joshua D. Rockwell.*

**On brief:** *Frost Brown Todd LLC, Frank J. Reed, Jr., Ashley L. Oliker*, and *Zackary L. Stillings*, for appellee. **Argued:** *Zackary L. Stillings.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Victoria's Secret Stores, LLC, appeals from a decision and entry of the Franklin County Court of Common Pleas entering judgment in favor of defendant-appellee, Cintas Corporation No. 2, on Victoria's Secret's claim of breach of contract. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On January 23, 2019, Victoria's Secret filed a complaint against Cintas asserting a claim of breach of contract. The allegations in the complaint related to an incident on November 17, 2015 in which Cintas, through a subcontractor, performed work to lower the height of the sprinkler heads inside the Victoria's Secret retail store located inside the White Oaks Mall in Springfield, Illinois. During the performance of the sprinkler

work, the Victoria's Secret store flooded, causing damage to both the structure of the store and the merchandise within the store. Victoria's Secret alleged it suffered in excess of $123,435.05 in damage.

{¶ 3} Cintas filed a motion for summary judgment on May 3, 2019 arguing neither it nor its subcontractor breached any portion of the services contract between Cintas and Victoria's Secret. Specifically, Cintas noted that Section 1.1.a. of the services contract required Cintas to perform services "in a good, workmanlike, professional and conscientious manner according to the generally accepted standards of the industry to which the Services pertain." (Def.'s Mot. for Summ. Jgmt. at 2.) Cintas argued that there remained no genuine issue of material fact that it performed the services in a good, workmanlike, professional and conscientious manner, and that the damage to Victoria's Secret store and merchandise was the result of the mall's own failure to properly drain the sprinkler system prior to the subcontractor's work. As the mall was not one of Cintas' subcontractors, Cintas asserted it could not be found to have breached its contract with Victoria's Secret.

{¶ 4} Victoria's Secret opposed Cintas' motion for summary judgment and filed its own cross-motion for summary judgment, asserting there remained no genuine issue of material fact as to whether Cintas breached the contract and arguing it was entitled to judgment in its favor as a matter of law. Specifically, Victoria's Secret relied on a separate provision of Section 1.1.a. of the services contract, which provides Cintas "shall be liable for any costs incurred by [Victoria's Secret] arising from [Cintas'] failure to promptly and fully perform the Services in accordance with this Agreement, including without limitation, any costs arising from missed service calls, poor schedule tracking, inadequate follow up or communication, and inadequate work." (Def.'s Ex. 1 at 1, Master Facilities Services Agreement, attached to Ex. A, Aff. of Sean McLaughlin, attached to Def.'s Mot. for Summ. Jgmt.) Thus, Victoria's Secret argued that, under the terms of the contract, Cintas was liable for the cost of the flooded store and damaged merchandise.

{¶ 5} In a January 24, 2020 decision and entry, the trial court granted in part and denied in part Cintas' motion for summary judgment and denied Victoria's Secret cross-motion for summary judgment. As to Cintas' motion for summary judgment and Victoria's Secret's cross-motion for summary judgment, the trial court concluded there remained a

genuine issue of material fact as to whether Cintas, through its subcontractor, breached the contract by failing to accurately identify the specific sprinkler valves and zones that needed to be shut down prior to beginning the sprinkler work. Thus, the trial court found there remained a genuine issue of material fact as to whether Cintas breached its contract to perform the work in a good or workmanlike manner. However, the trial court granted summary judgment in favor of Cintas on Victoria's Secret's claim that Cintas failed to obtain Victoria's Secret's consent to use the specific subcontractor that performed the sprinkler work. Additionally, the trial court granted summary judgment in favor of Cintas on Victoria's Secret's claims that the mall was a subcontractor of Cintas and that Cintas failed to obtain the required insurance coverages.

{¶ 6} The matter then proceeded to a bench trial on October 21, 2020. The trial court heard testimony from Kevin Hergenroeder, a sprinkler technician employed with Marmic, the subcontractor for Cintas, who was performing the sprinkler work when the sprinkler heads began to discharge. Hergenroeder testified that on November 9, 2015, he went to the mall management office to fill out a request to drain form and a request to enter the mall form for his planned work on November 17, 2015. At the mall maintenance office, Hergenroeder said he spoke with Kenny Hutchinson, the mall manager, who told Hergenroeder he would not be permitted to perform the drain down system himself, nor would he be permitted to enter the riser room housing the sprinkler system controls. Hergenroeder testified that Hutchinson told him he would need to pay the mall $250 to drain the sprinkler system. Pursuant to his testimony, Hergenroeder was never shown a map of the sprinkler zone prior to his work and he was never informed he would need to review a map of the sprinkler zones prior to his work. Hergenroeder said Hutchinson had him complete a form indicating that when he returned to perform the sprinkler work on November 17, 2015, he would not be permitted anywhere in the mall besides his designated work area in the Victoria's Secret store. Hutchinson did not testify at trial.

{¶ 7} When Hergenroeder returned to the mall on November 17, 2015, mall maintenance staff escorted him to the Victoria's Secret store and told him to wait there while the maintenance staff drained the sprinkler system for the store. Hergenroeder testified he waited at the Victoria's Secret store until the maintenance staff returned and told him the draining of the system was complete and that he could begin his work in the

store.  Additionally, Hergenroeder said no one at the mall asked him what specific zone of the sprinkler system needed to be turned off; instead, Hergenroeder said he told the maintenance staff he would need the system drained for the Victoria's Secret store.  After the maintenance staff told Hergenroeder the sprinkler system had been drained, Hergenroeder said he began his work.  Hergenroeder said it is normal when working on a sprinkler head for a small amount of water to drip out initially but that when he was working in the Victoria's Secret store that day, large amounts of water began pouring out of the sprinkler at a significant rate.

{¶ 8}  Hergenroeder said a Victoria's Secret employee immediately called maintenance to tell them the water had not been shut off and that Hergenroeder waited in the mall hallway to locate the maintenance staff.  After approximately five minutes, Hergenroeder said the mall maintenance staff arrived and told him they were not sure which sprinkler zone needed to be shut off.  At that point, Hergenroeder said the maintenance staff permitted Hergenroeder to enter the riser room where he saw, for the first time, a map of the sprinkler zones on the wall.  Hergenroeder said he then shut off the controls for the zone next to the zone that the mall maintenance staff had shut off, and that action stopped the water from flowing.  He testified he was not entirely sure which valve he would have needed to shut off, but he decided it "really couldn't hurt" to try shutting off the other valves until the water stopped.  (Tr. at 256.)

{¶ 9}  Additionally, the trial court heard testimony from James Sicilia and Michael Kennedy, maintenance employees for White Oaks Mall, describing the events of November 17, 2015.  Kennedy testified that, in his experience as a maintenance technician for the mall, the contractors are typically responsible for reading the plumbing maps and plans for the sprinkler zones.  Kennedy further testified that the contractor is usually the one to inform him which sprinkler zone to shut off.  On November 17, 2015, Kennedy said he met with Hergenroeder prior to draining the sprinkler system and that Hergenroeder told him he "needed zone one drained."  (Tr. at 124.)  He further testified that the other maintenance employee asked Hergenroeder if he wanted to go down to the riser room to drain the system but that Hergenroeder declined.

{¶ 10}  Kennedy had submitted an affidavit prior to trial.  On cross-examination, Kennedy admitted that although he stated in his affidavit that he instructed Hergenroeder

that he was required to inspect the sprinkler zone maps, he did not actually make this statement to Hergenroeder nor did he remember Sicilia making that statement. Kennedy also admitted on cross-examination that although his affidavit stated he advised Hergenroeder it was his responsibility to inform the mall which sprinkler zone to turn off, he never actually made such a statement to Hergenroeder, and he waffled back and forth between whether he or Sicilia informed Hergenroeder of any similar responsibility. Additionally, Kennedy agreed he had no reason to dispute Hergenroeder's testimony that Hutchinson informed him he would not be permitted in the riser room.

{¶ 11} Sicilia testified that, generally, a contractor working on a sprinkler system in the mall would accompany him to the riser room when the sprinkler zone is drained. Sicilia said that on November 17, 2015, Hergenroeder told him he needed to drain the riser for the Victoria's Secret store, recalling Hergenroeder as specifically saying he needed "the one zone for Victoria['s] Secret drained." (Tr. at 181.) Sicilia testified he asked Hergenroeder if he was going to accompany maintenance staff to the riser room but that Hergenroeder said he did not need to go with them. When he went down to the riser room, Sicilia said he drained "the one zone which was number one for Victoria['s] Secret." (Tr. at 182.) On cross-examination, Sicilia admitted he did not recall ever instructing Hergenroeder that Hergenroeder was required to inspect the plumbing zones and maps prior to performing the sprinkler work despite stating in his affidavit that he had so instructed Hergenroeder.

{¶ 12} Cintas also presented the testimony of an expert witness, Richard Thomas Long, Jr., who testified that it was appropriate for Hergenroeder to proceed with his work despite not being allowed in the riser room or not having been shown the sprinkler zone map. Long further testified that, in his opinion in the industry, the mall was in a better position than a contractor to understand and navigate the complicated system of zone maps for the mall's sprinkler system. Long ultimately opined that neither Cintas nor its subcontractor contributed in any way to the water loss as a result of Hergenroeder's sprinkler work.

{¶ 13} Following the trial, the trial court issued a February 8, 2021 decision and entry with findings of fact and conclusions of law. The trial court specifically found that neither Sicilia nor Kennedy contradicted Hergenroeder's testimony that he was instructed that he would not be permitted to enter the riser room with the sprinkler valve shut-offs

prior to performing the work. Additionally, the trial court noted Hergenroeder's testimony that he completed the required forms for the mall to drain the sprinkler system on November 9, 2015, more than a week prior to performing the work, and paid the required $250 drain down fee, but that Hergenroeder was never shown a map of the sprinkler zones at the mall and was never instructed that he would need to advise mall maintenance employees which specific sprinkler zone they would need to turn off on the day of his work. The trial court found that when Hergenroeder returned to the mall on November 17, 2015, he was escorted directly to the Victoria's Secret store and was instructed to wait for the mall maintenance employees to complete the drain down of the sprinkler system before beginning his work. The trial court found that Hergenroeder waited until mall maintenance staff informed him that the drain down process was complete, and only then did Hergenroeder begin his work on the first sprinkler head.

{¶ 14} From this testimony, the trial court concluded that Cintas, through its subcontractor, performed under the contract and Victoria's Secret could not, therefore, demonstrate the necessary facts to support its claim for breach of contract. Specifically, the trial court concluded Victoria's Secret was unable to demonstrate a breach of the contract because it did not show that Hergenroeder was permitted to view a map of the sprinkler system zones, that a map of the sprinkler zones was in the mall maintenance office and viewable by Hergenroeder, that Hergenroeder was instructed that he would need to advise the mall maintenance employees which specific sprinkler zone they would need to turn off prior to his work, or that Hergenroeder was permitted in the riser room prior to the drain down of the sprinkler system. Thus, the trial court entered judgment in favor of Cintas. Victoria's Secret timely appeals.

## II. Assignments of Error

{¶ 15} Victoria's Secret assigns the following errors for our review:

> [1.] The trial court erred in denying Victoria's Secret's Cross-Motion for Summary Judgment because no genuine issues of material fact remain which should properly be decided by a trier of fact or in the alternative, the facts which were presented were sufficient to determine that Cintas breached its contract with Plaintiff resulting in damages.

[2.] The trial court erroneously held after the bench trial that Plaintiff failed to meet its burden of proof showing Defendant breached the parties' contract despite the manifest weight of the evidence demonstrating there was an unambiguous contract and breach resulting in damages to Plaintiff.

## III.  Second Assignment of Error

{¶ 16}  For ease of discussion, we address Victoria's Secret's assignments of error out of order. In its second assignment of error, Victoria's Secret argues the trial court erred in concluding Victoria's Secret did not demonstrate that Cintas breached the contract and in entering judgment in favor of Cintas.  Through this assignment of error, Victoria's Secret raises issues that implicate both the interpretation of a written contract and the manifest weight of the evidence.

### A.  Standard of Review and Applicable Law

{¶ 17}  The construction and interpretation of written contracts involves questions of law that this court reviews de novo.  *McKeny v. Ohio Univ.*, 10th Dist. No. 17AP-392, 2017-Ohio-8589, ¶ 19, citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978), paragraph one of the syllabus.  The purpose of contract construction is to realize and give effect to the intent of the parties.  *Id.*, citing *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus.  "[T]he intent of the parties to a contract resides in the language they chose to employ in the agreement."  *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992).  When " 'the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.' "  *Holdeman v. Epperson*, 111 Ohio St.3d 551, 2006-Ohio-6209, ¶ 12, quoting *Shifrin* at 638.

{¶ 18}  In a civil case, a reviewing court will not reverse the judgment as being against the manifest weight of the evidence when some competent, credible evidence supports all the essential elements of the case.  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978).  In determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trial court are correct.  *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).  "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their

demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*

{¶ 19} Here, Victoria's Secret argues the trial court erred when it concluded Cintas did not breach its contract with Victoria's Secret through the performance of the sprinkler work. To succeed on a claim of breach of contract, a plaintiff must demonstrate (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff. *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 13, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.).

{¶ 20} The parties agree that a contract exists between Victoria's Secret and Cintas. The issue at trial was whether Victoria's Secret demonstrated a breach of that contract when Cintas, through its subcontractor, performed the sprinkler work. The pertinent contract language is found in Section 1.1.a. of the Master Facilities Services Agreement and provides:

> [Cintas] agrees to provide for [Victoria's Secret] certain Services as requested by [Victoria's Secret] and agreed to by [Cintas] from time to time, in accordance with written descriptions of Services to be performed by [Cintas] set forth in various statements of work, in the form attached to this Agreement as Exhibit A or in such other form as the parties may agree (each, a "Statement of Work"). * * * The Services shall be performed in a good, workmanlike, professional and conscientious manner according to the generally accepted standards of the industry to which the Services pertain, by experienced and qualified employees of [Cintas] or its Subcontractor(s) (as provided below). In addition, [Cintas] and all of its Subcontractors shall at all times observe such security and safety policies of [Victoria's Secret] as [Victoria's Secret] may provide to [Cintas], and perform work in a manner which does not disrupt [Victoria's Secret] or its Affiliates' ordinary business operations. In the event [Cintas] anticipates at any time that [Cintas] or any Subcontractor will not be able to provide the Services in the manner agreed to in this Agreement, [Cintas] shall immediately notify [Victoria's Secret] in writing of such event. [Cintas] shall be liable for any costs incurred by [Victoria's Secret] arising from [Cintas'] failure to promptly and fully perform the Services in accordance with this Agreement, including without limitation, any costs arising from missed service calls, poor schedule

tracking, inadequate follow up or communication, and inadequate work.

(Contract Section 1.1.a.) From this section of the contract, Victoria's Secret sets forth three specific contractual provisions that form the basis of its claim that Cintas breached the contract: (1) Cintas did not perform the work in a good, workmanlike, professional and conscientious manner; (2) Cintas performed the work in a manner that disrupted Victoria's Secret's ordinary business operations; and (3) Cintas failed to promptly and fully perform the services through inadequate communication and inadequate work. Victoria's Secret argues on appeal that the trial court erred in concluding the evidence at trial did not support a conclusion that Cintas breached at least one of these three contractual provisions. Thus, we must examine each of the three contractual provisions and the evidence provided at trial relative to each provision.

### B. Good, Workmanlike, Professional and Conscientious Manner

{¶ 21} We first consider Victoria's Secret's argument that the trial court erred in concluding Victoria's Secret failed to prove that Cintas breached the contract based on Cintas' alleged failure to perform the sprinkler work in a good, workmanlike, professional and conscientious manner. As to this provision, Victoria's Secret asserts the trial court erroneously interpreted the contract to allow it to consider whether Cintas or the mall was at fault for not turning off the water supply before performing the work. Victoria's Secret argues that, under the contract, fault was not relevant. Rather, according to Victoria's Secret's interpretation, the contract's requirement that Cintas perform the work in a good, workmanlike, professional and conscientious manner necessitates the conclusion that it was Cintas' responsibility to ensure the sprinkler system had been properly drained. Cintas responds that Victoria's Secret is attempting to ignore the contractual language and create a new contractual standard that would impose liability on Cintas simply by proof of damages rather than by proof of any breach of the contract.

{¶ 22} Thus, the question before us is whether, under the terms of the contract, services can be performed in a good, workmanlike, professional and conscientious manner even where damage occurs during the course of the performance of the services. Stated another way, Victoria's Secret's interpretation of the contract is that because the store suffered damage, Cintas could not have performed the work in a good, workmanlike,

professional and conscientious manner. While Victoria's Secret asserts the omission in the contract of more specific language related to which entity was responsible for ensuring the sprinkler system was drained demonstrates that the intent of the parties was that Cintas was wholly responsible for the draining of the sprinkler system, the plain language of the contract does not support its position. Instead, the contract provides "[t]he Services shall be performed in a good, workmanlike, professional and conscientious manner *according to the generally accepted standards of the industry to which the Services pertain*." (Emphasis added.) (Contract Section 1.1.a.) Thus, based on the plain language of the contract, a determination of whether the work was performed in a good, workmanlike, professional and conscientious manner is dependent upon the generally accepted standards of the industry. To accept Victoria's Secret's interpretation of the contract would render unnecessary the consideration of the generally accepted standards of the industry and instead add into the contract an imposition of strict liability on Cintas whenever damage occurs even if Cintas' work satisfied the generally accepted standards of the industry. We will not create a new contractual intent where the plain language does not support it. *Holdeman* at ¶ 12.

{¶ 23} Looking to the language of the contract, we do not agree with Victoria's Secret that the trial court improperly construed the contract as allowing it to consider whether Cintas or the mall was at fault for the draining of the sprinkler system. In finding it could consider who was at fault for not ensuring the sprinkler system had been properly drained, the trial court was not, as Victoria's Secret suggests, imposing a negligence standard. Rather, the trial court's determination of whether Cintas or the mall was at fault for the draining of the sprinkler system was an appropriate factual determination under the terms of the contract. The factual determination related to whether the sprinkler services were performed in a good, workmanlike, professional and conscientious manner according to the generally accepted standards of the industry.

{¶ 24} Victoria's Secret argues that even if the trial court could consider whether the mall or Cintas was at fault for the improperly drained sprinkler system, the trial court's determination that Cintas was not at fault was against the manifest weight of the evidence. Having reviewed the record, we disagree. Hergenroeder testified that during his initial meeting with mall maintenance staff, Hutchinson told him that Hergenroeder could not

perform the drain down of the system himself and that mall employees would drain the system. Hergenroeder testified he paid the mall the required $250 fee to drain the system, and he further testified that Hutchinson informed him he would not be permitted in the riser room. Additionally, Hergenroeder testified he was never shown a map of the sprinkler zone prior to his work nor was he told he would need to review a map of the sprinkler zones prior to his work. When he returned to the mall at a later date to perform the work, Hergenroeder testified that he was escorted directly to the Victoria's Secret store, was told to wait at the store until the mall maintenance staff completed the drain down, and then did not begin his work until he received such communication from the mall maintenance staff that the sprinkler system had been properly drained. Moreover, Cintas provided expert testimony that Hergenroeder was performing according to industry standards during his interactions with the mall maintenance staff over the course of his performance of the sprinkler services.

{¶ 25} The only evidence at trial that Hergenroeder did not perform in a good, workmanlike, professional and conscientious manner was the testimony of Sicilia and Kennedy. However, as the trial court noted, Sicilia and Kennedy provided inconsistent testimony in their affidavits and at trial. Further, while both Sicilia and Kennedy testified that sprinkler contractors are usually permitted in the riser room, they both testified that they had no reason to refute Hergenroeder's testimony that he was specifically informed by Hutchinson that he would not be permitted to enter the riser room. Hutchinson did not testify at trial and, thus, also did not refute Hergenroeder's testimony on this point.

{¶ 26} Based on this record, we will not second guess the trial court's credibility determination in believing Hergenroeder's testimony. As such, we find competent, credible evidence supports the trial court's conclusion that it was the mall staff, and not Hergenroeder, who was at fault for the improperly drained sprinkler system. Thus, from this evidence, Victoria's Secret did not demonstrate that Cintas, through its subcontractor, breached the contract by failing to perform the services in a good, workmanlike, professional and conscientious manner.

## C. Disruption of Ordinary Business Operations

{¶ 27} Victoria's Secret next argues the evidence demonstrated that Cintas breached the contract by disrupting Victoria's Secret's ordinary business operations. As noted above,

the contract provides that Cintas shall "perform work in a manner which does not disrupt [Victoria's Secret's] or its Affiliates' ordinary business operations." (Contract Section 1.1.a.) There is no dispute that water flowed from the sprinkler heads and caused damage to Victoria's Secret's store and merchandise. Victoria's Secret asserts that, under the contract, the damaged store and merchandise is sufficient proof that Cintas' work disrupted Victoria's Secret's ordinary business operations.

{¶ 28} Similar to its argument related to the good, workmanlike, professional and conscientious manner provision, Victoria's Secret again urges an interpretation of the contract that focuses on the resulting damages without regard to the performance of the services as the contract requires. However, in looking at the express language of the contract, the disruption of the ordinary business operations must be causally linked to the actual *performance* of the work. Victoria's Secret provided no evidence that Hergenroeder's actual interaction with the sprinkler heads in the store was insufficient or was the cause of the damage; instead, Victoria's Secret's entire argument was that Hergenroeder's failure to ensure the sprinkler system was properly drained before beginning his work caused the disruption to its ordinary business operations. To the extent Victoria's Secret argues Hergenroeder's coordination with the mall maintenance staff prior to physically touching the sprinkler head constituted deficient performance under the contract, we have already found that there was competent, credible evidence that the mall, and not Cintas, was responsible for the improperly drained sprinkler system. Thus, we find the manifest weight of the evidence supports the finding that the performance of the work did not disrupt the ordinary business operations of Victoria's Secret, and Victoria's Secret, therefore, did not demonstrate that Cintas breached this portion of the contract.

### D. Failure to Promptly and Fully Perform the Services

{¶ 29} Finally under this assignment of error, Victoria's Secret argues the trial court erred in failing to conclude that Cintas breached the provision of the contract related to promptly and fully performing the services. As relevant here, the contract provides "[Cintas] shall be liable for any costs incurred by [Victoria's Secret] arising from [Cintas'] failure to promptly and fully perform the Services in accordance with this Agreement, including without limitation, any costs arising from missed service calls, poor schedule tracking, inadequate follow up or communication, and inadequate work." (Contract

Section 1.1.a.) Victoria's Secret argues Cintas breached this provision because Victoria's Secret did not bargain for its store to be flooded and its merchandise damaged; rather, it bargained for Cintas to perform the sprinkler services. Further, Victoria's Secret asserts Cintas breached the contract through inadequate communication with the mall maintenance staff and inadequate work.

{¶ 30} Victoria's Secret relies on both the contract's reference to "inadequate communication" and the additional language in the work order specifying that Cintas would "[c]oordinate with mall personnel to shut down and drain the sprinkler system" for its position that Cintas breached the contract. (Def.'s Ex. C, Deficiency Repair Proposal.) Victoria's Secret characterizes Hergenroeder's testimony that he communicated and coordinated with mall maintenance staff about the draining of the sprinkler system as constituting proof of inadequate communication and inadequate coordination since, after his communication and coordination, the store was damaged by the improperly drained sprinkler system. Victoria's Secret's argument again relies on evidence of the resulting damage to the store as necessarily demonstrating Cintas' breach. The testimony presented at trial did not establish that Hergenroeder's communication and coordination with mall maintenance staff, itself, was inadequate. Rather, there was competent, credible evidence that Hergenroeder adequately communicated with mall maintenance staff prior to beginning his work. The evidence at trial does not support a finding that the water damage was the result of inadequate communication or coordination. Thus, Victoria's Secret cannot demonstrate Cintas breached this portion of the contract.

{¶ 31} Additionally, Victoria's Secret argues the flooded store and damaged merchandise demonstrate inadequate work, and it notes Victoria's Secret did not bargain for sprinkler work that would allow excess water to pour into its store. For the same reasons as we have articulated above, the fact of damage to the store is not the same as proof of breach of the contract. We noted above that there was competent, credible evidence at trial that Hergenroeder's actual sprinkler services were performed in a good, workmanlike, professional and conscientious manner. To state it plainly, based on the evidence at trial related to Hergenroeder's communication and coordination with mall maintenance staff and his physical interactions with the sprinkler head in the store, the work, itself, was not inadequate. Based on the evidence presented at trial, the undrained sprinkler system that

caused the damage to the store and the merchandise was the responsibility of the mall, not of Cintas or its subcontractor under the terms of the contract.

{¶ 32} For these reasons, we conclude the trial court correctly interpreted the relevant terms of the contract. As there was competent, credible evidence supporting all the essential elements of the case, the trial court's decision is not against the manifest weight of the evidence. Thus, the trial court did not err in entering judgment in favor of Cintas on Victoria's Secret's claim for breach of contract. We overrule Victoria's Secret's second assignment of error.

## IV. First Assignment of Error

{¶ 33} In its first assignment of error, Victoria's Secret argues the trial court erred in denying its cross-motion for summary judgment. However, "[o]rdinarily, 'the denial of a motion for summary judgment is not a point of consideration in an appeal from a final judgment entered following a trial on the merits.' " *Huntington Natl. Bank v. Haehn*, 10th Dist. No. 17AP-342, 2018-Ohio-4837, ¶ 52, quoting *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 156 (1994). Where a trial court denies a motion for summary judgment due to the existence of a genuine issue of material fact, and the nonmoving party subsequently prevails at trial, any error in denying the motion for summary judgment is moot or harmless. *Id.* (noting that "[t]o allow a summary judgment decision based on less evidence to prevail over a verdict reached on more evidence would defeat the fundamental purpose of judicial inquiry"), citing *Whittington* at 156-57.

{¶ 34} Here, Victoria's Secret argues this assignment of error merits consideration because the trial court made erroneous legal determinations in its summary judgment ruling. *See Timoneri v. NorthSteppe Realty, Inc.*, 10th Dist. No. 15AP-618, 2016-Ohio-5901, ¶ 26 (a verdict in the nonmoving party's favor does not moot purely legal questions from a prior motion for summary judgment). Though Victoria's Secret attempts to avoid *Whittington's* application by recasting the trial court's decision as erroneously determining a question of law, it is clear from the trial court's decision and entry denying Victoria's Secret's cross-motion for summary judgment that the trial court determined there remained a genuine issue of material fact as to whether Cintas breached its contract with Victoria's Secret. To the extent Victoria's Secret asserts it is challenging the trial court's interpretation of the contract, we resolved the issues related to the interpretation of the

contract in our consideration of the trial court's verdict under the second assignment of error. Ultimately, Victoria's Secret seeks relief in the form of a reversal of the trial court's summary judgment decision. Pursuant to *Whittington*, a trial on the merits moots the error Victoria's Secret raises in its first assignment of error. *Huntington* at ¶ 53, citing *Whittington* at 157-58. Accordingly, we overrule Victoria's Secret first assignment of error.

## V. Disposition

{¶ 35} Based on the foregoing reasons, the trial court did not err in interpreting the contract between Victoria's Secret and Cintas, and the manifest weight of the evidence supports the trial court's verdict that Victoria's Secret did not demonstrate that Cintas breached the contract. Having overruled Victoria's Secret's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., and MENTEL, J., concur.

_____