## Vinci v. American Can Co.
*[Cite as 7 AOA 331]*

*Case No. 58857*
*Cuyahoga County, (8th)*
*Decided September 27, 1990*

*John G. Lancione, Spangenberg, Shibley, Traci & Lancione, 1500 National City Bank Building, Cleveland, Ohio 44114, for Plaintiffs-Appellants.*

*Robert S. Brown, Brown, Cummins & Brown Co., L.P.A., 3500 Carew Tower, 441 Vine Street, Cincinnati, Ohio 45202, for Plaintiff-Appellant, Oscar Robertson.*

*Damond R. Mace and James H. Woodring, Squire, Sanders & Dempsey, 1800 Huntington Building, Cleveland, Ohio 44115, for Defendants-Appellees, American Can Company, Minute Maid Corporation, and the Coca Cola Company.*

*Sarah Gabinet, Kohrman, Jackson & Krantz, One Cleveland Center, 20th Floor, Cleveland, Ohio 44114, for Defendant-Appellee, Marden-Kane, Inc.*

*William J. O'Neill, Burke, Haber & Berick, 300 National City Bank Building, Cleveland, Ohio 44114, for Defendant-Appellee, Spencer Marketing Services.*

*Per Curiam.*
Charles Vinci, the 1956 and 1960 weightlifting olympic gold medalist, alleged that the American Can Company, Minute Maid Corporation, Coca-Cola Company, Spencer Marketing and Marden-Kane Co. ("the companies") used his name and likeness on a series of promotional disposable drinking cups sold as Dixie Cups. Vinci sought damages for himself and the class of olympic athletes ("the athletes") referred to on the promotional cups. In their sole assignment of error, the athletes argue that the trial court granted the companies' motion for summary judgment improvidently. Upon review of the record, we find that no genuine issue of material fact exists and that summary judgment was appropriate.

The Supreme Court of Ohio has established the standard for invasion of privacy by appropriation of the name or likeness of another:

"One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy, and the use or benefit need not necessarily be commercial." *Zacchini v. Scripps-Howard Broadcasting Co.* (1976), 47 Ohio St. 2d 224, [1 O.O.3d 129], 351 N.E.2d 454, paragraph one of the syllabus, rev'd on other grounds (1977), 433 U.S. 562.

The fundamental wrong is the appropriation of a person's name, likeness, or identity for one's own benefit "\*\*\* whether or not that benefit is pecuniary". *Id.* at 229-230. However, mere incidental use of a person's name or likeness is not actionable under the "right of publicity". In *Zacchini*, the Supreme Court of Ohio quoted with approval the then proposed Restatement of Torts 2d, Sec. 652C (Draft No. 13):

"Incidental use of name or likeness. The value of the plaintiff 's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity.

"No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of

publication, for example of a newspaper, out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness." *Zacchini, supra,* 47 Ohio St. 2d at 231, fn. 4. Our review indicates that the mention of the athletes names within the context of accurate, historical information was incidental to the promotion of the Dixie Cups by the partnership between the Minute Maid Corporation and the United States Olympic Committee. The reference to the athletes and their accomplishments was purely informational; there was no inference the athletes used, supported, or promoted the product. *Benally v. Hundred Arrows Press, Inc.* (D.C. N.M. 1985), 614 F. Supp. 969, rev'd on other grounds; (10th Cir., 1588), 858 F.2d 618; cf. *Cher v. Forum International Ltd.* (9th Cir., 1982), 692 F.2d 634. Reference to the athletes' names, likenesses, and identities was merely incidental, historical information.

Appellant's assignment of error is overruled.

The judgment of the trial court is affirmed.

VICTOR, J., concurs.

Sitting by assignment, Judge William H. Victor, Retired, of the Ninth District Court of Appeals. Sitting by assignment, Judge Joseph P. Mallone, Retired, of the Ashtabula County Common Pleas Court.

MALLONE, J., dissenting.

I respectfully dissent. I believe that a genuine issue of material fact remains to be litigated.

Summary judgment is appropriate only when it appears from the evidentiary materials that reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-movant. *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317; *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio St. 3d 78. Where competing reasonable inferences may be drawn from undisputed evidence, resolution of an issue should be left for determination by a fact finder. *Duke v. Sanymetal Products Co.* (1972), 31 Ohio App. 2d 78.

The companies maintain that their purpose in using the athletes' names on the cups was informational rather than commercial. The athletes argue that the companies' affidavit demonstrates that the Dixie Cup promotion was intended to put Dixie Cups and Minute Maid products before the public in a favorable light. They claim that the use of their names and achievements enhance the promotional value of the cups.

Evidentiary material attached to the defendants' summary judgment motion describes the purpose of the campaign, as follows:

"The purpose of this promotion is to conduct a revenue generating event which will benefit the United States Olympic Committee. An event which reinforces the Minute Maid overall three year commitment to their 'partnership.' A 'partnership' which by choice will have presence. (sic) A 'partnership' with the United States Olympic Team which is a natural association. Athletes directly benefit from the consumption of fruit based juices and drinks."

I believe that a fact finder could reasonably infer from the foregoing that the companies' purpose in using the athletes' names, identities and achievements was to put their products before the public in a favorable light and enhance the promotional value of the cups. Therefore, I would sustain the assigned error.