RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0055p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PATRICIA LAFLEUR and MICHAEL GROSE, SR.,
individually and as the representatives of a class of
similarly situated persons,

        *Plaintiffs-Appellants*,

   *v.*

YARDI SYSTEMS, INC., a California corporation,

        *Defendant-Appellee*.

No. 25-3172

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:24-cv-01262—Pamela A. Barker, District Judge.

Decided and Filed:  February 27, 2026

Before:  NALBANDIAN, DAVIS, and HERMANDORFER, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:** Glenn L. Hara, ANDERSON + WANCA, Rolling Meadows, Illinois, for Appellants.  Ryan D. Watstein, James M. Ruley, WATSTEIN TEREPKA, LLP, Atlanta, Georgia, for Appellee.

_____

### OPINION

_____

NALBANDIAN, Circuit Judge.  Yardi Systems operates a website called PropertyShark. That website offers reports comprising useful information, like sales history and ownership information, about real estate.  Patricia LaFleur and Michael Grose, Sr., aren't happy that they— along with a proposed class of fellow Ohioans—appear in PropertyShark's reports.  So they sued

Yardi, alleging that it violated their state-law right of publicity.  The district court dismissed their claims because, among other problems, the plaintiffs failed to allege that their identities carried distinct commercial value—a required element of their claims.  We agree, so we affirm.

**I.**

We review dismissals for failure to state a claim de novo while accepting as true the facts alleged by the plaintiffs.  *Martinez v. Wayne County*, 142 F.4th 828, 843 (6th Cir. 2025).

Defendant Yardi Systems, Inc., operates a "property research website" called PropertyShark.  R.1, Compl., PageID 5.  The platform offers "detailed" property reports that include "ownership details, property values, and sales history."  *Id.* at PageID 5, 6.  Users access those reports through two search functions.  Under the property-search method, users can pull up the property report for a particular street address.  And the owner-search function allows users to specify a person's name to get a list of properties they own.  From there, the user can obtain the report for any property included in the resulting portfolio.

PropertyShark doesn't offer its service as a charity.  Although it allows free access to one property report per registered user, anything more requires payment.  To access more, a user must either (1) pay a $4.95 per-report fee or (2) purchase a monthly or annual subscription.  In other words, PropertyShark operates on a free-trial basis by offering users an enticing sample of the full product to earn paid business.

Importantly, PropertyShark advertises its paid features only after a user executes either a property or owner search.  After that, though, it reminds users at multiple junctures that they can pay to get more.  On the owner-search results page, a message tells users that they can only see the first three results without paying.  And the free property report itself tells the user that he "can either upgrade to a premium account or purchase individual reports" to see more.  R.1, PageID 7.

Plaintiffs Patricia LaFleur and Michael Grose, Sr., are two Ohio homeowners whose information appears in PropertyShark reports. LaFleur's and Grose's reports include their names, property address (which, in both cases, is also their home address), property purchase price, tax details, and other information about their Ohio property. Neither plaintiff consented to PropertyShark using their information. Nor would they have consented if asked.

Unhappy with PropertyShark's unconsented use of their personal information, LaFleur and Grose sued Yardi on behalf of a putative class of other property owners.[1] They allege that Yardi violated their right of publicity under Ohio statutory and common law. Count One of the Complaint alleges a violation of Ohio's Right of Publicity Statute (ORPS), Ohio Revised Code § 2747.01 et seq., and Count Two a violation of Ohio's common-law tort of appropriation of name or likeness.

Yardi moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing (among other things) that the plaintiffs' personal information doesn't qualify for protection under Ohio law because their names lack independent commercial value. The district court dismissed the complaint with prejudice. The plaintiffs appealed.

## II.

The plaintiffs' claims arise under two overlapping sources: the common-law tort of appropriation of name or likeness and the ORPS. Both prohibit essentially the same conduct: the (1) unauthorized use of (2) a person's commercially valuable name or likeness for (3) commercial purpose. *See Hudson v. Datanyze, LLC*, No. 23-3998, 2025 WL 80806, at *2 (6th Cir. Jan. 13, 2025) (explaining both causes of action); *Zacchini v. Scripps-Howard Broad.*

---

[1]The proposed class includes:

> All current and former Ohio residents who are not subscribers to Yardi's PropertyShark platform and whose name, voice, signature, photograph, image, likeness, distinctive appearance, and/or identity is incorporated in property reports or owner search results used to market individual reports or paid subscriptions for the platform.

R.1, PageID 13.

*Co.*, 351 N.E.2d 454, 458–59 & n.4 (Ohio 1976) (recognizing the cause of action under Ohio common law), *rev'd on other grounds*, 433 U.S. 562 (1977).[2]

The plaintiffs' claims fail on the commercial-value prong. In making that conclusion, we're guided by a panel of this Court that decided nearly the same case just last year (albeit in an unpublished opinion). In *Hudson v. Datanyze, LLC*, the defendant ran an online service similar to PropertyShark, minus the "property" bit. Datanyze collected a database of over 120 million profiles containing email addresses and phone numbers—like PropertyShark's reports, but with an exclusive focus on contact information. *Hudson*, 2025 WL 80806, at *1. And just like PropertyShark, Datanyze made its profiles accessible to interested users on a trial basis, with a pre-set number of profiles available for free viewing before hitting a paywall. *Id.* Just like LaFleur and Grose, the *Hudson* plaintiffs—two individuals whose names and contact information appeared in Datanyze profiles—brought Ohio right-of-publicity claims on behalf of a putative class of similarly situated Ohio residents. *Id.* And just like the plaintiffs here, they alleged that Datanyze's "misappropriation of their names or likenesses to solicit paid subscriptions, in and of itself, demonstrates commercial value." *Compare id.* at *3, *with* Appellant Br., p.17 ("The fact that Yardi is successfully using Plaintiffs' personas for a commercial benefit . . . establishes that those personas have at least some commercial value." (citation modified)). But we disposed of that argument because "[n]either Ohio courts, nor this court when applying Ohio law, have endorsed this theory." *Hudson*, 2025 WL 80806, at *3.

The *Hudson* panel relied on state-court cases showing that Ohio law doesn't deem a persona commercially valuable solely because someone uses it to win business. *Id.* at *2–3 (collecting cases). In one case, an aircraft detailer named Muller, working as an outside vendor at the Ohio State University's airport, complained that the University appropriated his likeness in social media posts and articles. *Imperial Aviation Servs. LLC v. Ohio State Univ.*, 252 N.E.3d

---

[2]When it first recognized a right-of-publicity action under state common law, the Ohio Supreme Court defined it by quoting directly from a then-draft version of the Restatement (Second) of Torts. *See Zacchini*, 351 N.E.2d at 458 n.4; *see also ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 930 (6th Cir. 2003) ("When the Ohio Supreme Court recognized the right of publicity, it relied heavily on the Restatement (Second) of Torts" (capitalization modified)). But the Restatement's publisher later transferred the right-of-publicity section to the Restatement (Third) of Unfair Competition. *See ETW Corp.*, 332 F.3d at 930. Even so, Ohio courts have continued citing the Restatement (Second) of Torts in cases involving Ohio's right of publicity. *See, e.g., Imperial Aviation Servs. LLC v. Ohio State Univ.*, 252 N.E.3d 185, 194–95 (Ohio Ct. App. 2024). So we will do the same.

185, 195 (Ohio Ct. App. 2024).  By doing so, Ohio State "advertise[d] services OSU Airport tenants provide, thus promoting OSU's commercial success."  *Id.*  Even so, the court reasoned that "[n]o reasonable person could find that the usage of [the plaintiff's] likeness, as a person cleaning an airplane, on OSU social media posts was more than incidental to the informational purpose of those posts."  *Id.*  And that was fatal to Muller's claim.

Distilled down, the commercial-value requirement laid down by Ohio courts saves businesses from having to blanch their advertisements of all likenesses lest they invade the owners' right of publicity.  Rather, it ensures that only those businesses are liable whose "purpose" in including the likeness is to take advantage of the "commercial or other values" associated with the likeness.  *See id.* (quoting Restatement (Second) of Torts § 652C cmt. d (A.L.I. 1965)); *see also Vinci v. Am. Can Co.*, 591 N.E.2d 793, 794 (Ohio Ct. App. 1990) (references to athletes' names on disposable cups weren't actionable where they conveyed "accurate, historical information" and not endorsement).  And that makes sense.  The core of the tort is appropriation of a name or likeness for one's "own use or benefit."  Restatement (Second) of Torts § 652C.  Product marketers get "use" or "benefit" out of an element of their ads when that element affirmatively creates value in the viewer's eyes.  *See, e.g., Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 917–18, 923 (N.D. Ohio 2004) (footage of woman's participation in wet t-shirt competition not "merely 'incidental'" to advertisement for adult media company (quoting *Vinci*, 591 N.E.2d at 794)).  But if an ad element is present as a mere incident to the real star of the show, it's not directly of "use" or "benefit" to the advertiser.

To fulfill the commercial-value requirement, the plaintiffs weren't required to plead "'celebrity' status," but they needed to at least allege that their "name[s] had significant value, or, indeed, any commercial value."  *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 306 (Ohio Ct. App. 2020), *abrogated on other grounds by*, *Weidman v. Hildebrant*, 254 N.E.3d 2 (Ohio 2024).  It's enough for the plaintiffs to allege "notoriety which is strong enough to have commercial value within an identifiable group."  *Id.* (citation omitted).  So a plaintiff needn't possess widespread fame to have a commercially valuable persona—recognition within a subgroup suffices.  *See, e.g., James v. Bob Ross Buick, Inc.*, 855 N.E.2d 119, 123 (Ohio Ct. App. 2006)

(finding that an auto-sales manager's name carried sufficient commercial value when used to communicate with established dealership clients).

That isn't a high standard, but the plaintiffs still fail to clear it. Indeed, as the district court notes, LaFleur and Grose effectively "pled themselves out of court" by emphasizing that they're ordinary people whose names' alleged value stems only from their combination with other information. R.21, Op. & Order, PageID 221–22 (citation modified). Not a single allegation in the complaint supports a finding that LaFleur's or Grose's (or any putative class member's) name carries *any* recognition in *any* subgroup. *Harvey*, 154 N.E.3d at 306; *see also Hudson*, 2025 WL 80806, at *2–3 (finding that plaintiffs failed to plead commercial value without allegations that "their names and likenesses were particularly valuable or recognizable to [the defendant's] targeted customers"). Absent those kinds of allegations, we're left to conclude that their names appeared only incidentally alongside PropertyShark's invitations to the advertised service, in the sense that nothing about LaFleur or Grose *as* LaFleur or Grose adds value, in the user's eyes. *See Vinci*, 591 N.E.2d at 794.

The plaintiffs' counterarguments are unconvincing. The crux of their theory is that their "personas have intrinsic commercial value for the simple reason that they are used for advertising purposes, are sold at set prices, and are, in fact, a significant asset" to the PropertyShark platform, "as indicated by the fact that Yardi charges a fee for such personas." Appellant Br., p.6. But that stance runs headlong into our holding in *Hudson*. And it suffers from several other shortcomings to boot.

First, the plaintiffs' insistence that Yardi's allegedly commercial *purpose* suffices to show their names' commercial *value* effectively reads the latter requirement out of both the ORPS and the common law. But "[i]t is a basic canon of statutory interpretation" that courts should avoid any reading that "would render words superfluous." *In re Village Apothecary, Inc.*, 45 F.4th 940, 948 (6th Cir. 2022) (quotation omitted). And separately, when it comes to state common law, federal courts are bound to follow state courts' interpretations of their own law. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law."). Both those principles apply to prevent us from conflating distinct elements in Ohio statutory and common law. The ORPS used different phrases ("commercial value" and

"commercial purpose") in different provisions—a choice we must respect. Ohio Rev. Code § 2741.01(A) (defining "[p]ersona" as one of a variety of characteristics "if any of [them] have commercial value"); *id.* § 2741.02(A) (prohibiting the use of a person's persona "for a commercial purpose"). Likewise, the Restatement—which Ohio courts have adopted to define the common-law tort at issue here—separates the defendant's "commercial purpose" from the plaintiff's "reputation, prestige, or other value." Restatement (Second) of Torts § 652C cmts. b, d. This Court declined to conflate the two before. *Hudson*, 2025 WL 80806, at *3. And we see no reason to change tracks here.

Second, the smattering of non-binding caselaw that the plaintiffs rely on is unpersuasive. They argue that *Hudson* is "outweighed" by other "persuasive authorities." Appellant Br., p.16. We disagree. To start, the plaintiffs offer only decisions from district courts scattered across the country. *See id.* (citing cases). And the only in-circuit example is both factually and legally distinguishable. In *Wilson v. Ancestry.com, LLC*, the district court held that the plaintiff plausibly alleged commercial value solely by pleading that Ancestry.com "solicit[ed] paid subscriptions" using his persona. 653 F. Supp. 3d 441, 455 (S.D. Ohio 2023). But Ancestry.com used the plaintiff's persona in a more targeted way than Yardi does: by sending personalized emails with the plaintiff's information to prospective customers "who may be related" to the plaintiff, rather than appending a solicitation to subscribe onto any person's property report in an untargeted way. *Id.* at 447–48. So Ancestry.com affirmatively targeted its advertisements to people who might be related to the persona used in the advertisement, whereas PropertyShark passively invites users to become paying customers irrespective of which persona the user sees. *See id.* In *Ancestry*, unlike here, the name itself was part of the ad's value proposition.

Third, the plaintiffs urge us to "liberally" construe the ORPS under Ohio's remedial-statute doctrine. *See, e.g.*, Reply Br., p.3 (quoting *Whitaker v. M.T. Auto, Inc.*, 855 N.E.2d 825, 829 (Ohio 2006)). That doctrine requires courts to "liberally" construe statutes covered by Ohio Revised Code § 1.11. *Einhorn v. Ford Motor Co.*, 548 N.E.2d 933, 935 (Ohio 1990). "Remedial laws" are covered, including those that "involve procedural rights or change the procedure for effecting a remedy." Ohio Rev. Code § 1.11; *Burnell v. Cleveland Mun. Sch. Dist. Bd. of Educ.*, 114 N.E.3d 1274, 1280 (Ohio Ct. App. 2018) (quoting *Euclid v. Sattler*, 756 N.E.2d 201, 203

(Ohio Ct. App. 2001)). But the plaintiffs offer no court decisions holding—nor rationale supporting—that the ORPS counts as such a statute. So we see no reason to depart from the fundamental principle of statutory construction requiring us to give "commercial value" meaning independent of "commercial purpose."

That leaves the parties' other arguments. We needn't reach any of them. The plaintiffs' failure to plead an element of their claims is, by itself, reason enough to affirm the district court's judgment. Nor do we find occasion to certify a question of state law to the Ohio Supreme Court as to whether Ohio law entails a commercial value requirement. Federal courts "generally will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Smith v. Joy Techs., Inc.*, 828 F.3d 391, 397 (6th Cir. 2016) (quoting *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009)). If "well-established principles exist to govern" even an "arguably unsettled question of state law," certification is unnecessary. *Antioch Co. Litig. Trust v. Morgan*, 633 F. App'x 296, 304 (6th Cir. 2015) (citing *Pennington*, 553 F.3d at 450). And in conducting our analysis here, we rely on well-established principles laid out by Ohio courts.

## III.

For the foregoing reasons, we affirm the district court's judgment and deny the motion to certify a question of law to the Ohio Supreme Court.